UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSEPH JORDAN,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-10-03079-CI

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 16, 22.) Attorney D. James Tree represents Joseph D. Jordan (Plaintiff); Special Assistant United States Attorney M. Thayne Warner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits along with a Title XVI application for supplemental security income on September 25, 2006. (Tr. 14; 157.) He alleged disability due to mental disorders and back problems. (Tr. 162.) His alleged onset date is November 1, 2000. (Tr. 162.) Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). (Tr. 83-89; 95-100.) A hearing was held on January 5, 2010, at which Vocational Expert Deborah LaPoint; Carmen Rochelle Hamlin, Plaintiff's girlfriend; and Plaintiff, who was represented by counsel, testified. (Tr. 35-78.)

ALJ James W. Sherry presided. (Tr. 33.) At the hearing, the Plaintiff agreed that July 1, 2006, was the best date for alleged onset of disability. (Tr. 41.) The ALJ denied benefits on January 22, 2010, and the Appeals Council denied review. (Tr. 1-3; 14-28.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 45 years old. (Tr. 38.) Plaintiff was married, but had been separated for ten years. (Tr. 42.) He lives in a broken-down motor home, with his girlfriend and a dog. (Tr. 42.) Plaintiff obtained a GED, and testified that his sources of income include "can picking, metal gathering," and a variety of odd jobs. (Tr. 43-44.) He sometimes fishes for food. (Tr. 43.) His past work included working construction, campground maintenance, working at a pizza take-out store, and mobile home moving. (Tr. 45-47.) The Plaintiff testified that he has anxiety all the time, and he described it as "a stick of weird energy I guess you could call it. It's like a nervous energy or butterflies in the stomach, sweaty palms, hot flashes, just disorientation sometimes, almost as to the point of vertigo, I guess." (Tr. 49.) Plaintiff reported he experiences anxiety when he is around a group of four or more people. (Tr. 49.) He said he has disagreements with co-workers and supervisors "all the time." (Tr. 51.) He rarely leaves his motor home alone, and when asked if he sees things that others do not see, he responded:

> Well, let's just say about 4:00 o'clock in the morning about two summers ago I saw a flying craft enter our atmosphere from outer space to right above the freeway and as fast as you can hop on a elevator and feel the button, jumped to the little drop on the elevator, that fast. So and it, like I said, I know what I saw. If you don't believe in spacecrafts [then] you can call me a liar all day but if you believe in craft and you've thought of interstellar spaceflight, you know, the only question would be who's are there ours or somebody else's, and I don't know that. So, yeah, that kind of stressful, stuff like that is really stressful.

(Tr. 53.) Plaintiff testified that he does the dishes about twice per week, he does not like to go inside a grocery store because people are there. (Tr. 55.) Plaintiff also testified that he is sober, and when asked when he quit drinking alcohol, he responded:

> About ten years ago when I got in cooperation with myself to the best of my ability which is admitting that I had a mental problem of being more than one person occupying the same body.
>
> . . .
>
> And, and I realized that through my journaling and, and documentation and self awareness of different handwritings and just notes that I left for myself.

(Tr. 56.) He reported that he used marijuana to "self medicate to calm my nerves, to help me flow in society at a normal pace." (Tr. 56.) Plaintiff said he stopped using marijuana in about 2006. (Tr. 57.) Plaintiff testified he would cooperate with mental health officials and take prescribed medications if they were effective.[1] (Tr. 58.) Plaintiff reported that he stopped working due to a problem with his wrist, and after that employer went out of business, no one else would hire him due to his disabilities. (Tr. 162.)

**ADMINISTRATIVE DECISION**

ALJ Sherry found Plaintiff's date of last insured was September 30, 2006. (Tr. 14.) At step one, he found Plaintiff had not engaged in substantial gainful activity since November 1, 2000. (Tr. 16.) At step two, he found Plaintiff had severe impairments of "anxiety disorder, not otherwise specified; antisocial personality

---

[1]The record reveals Plaintiff did not have medical insurance, and thus few medical records exist. (Tr. 37; 213-14.)

disorder; polysubstance abuse; dissociative disorder; and depressive disorder." (Tr. 16.) At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). (Tr. 21.) In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. (Tr. 24.) He found that Plaintiff retained the RFC to perform light work with the additional limitations:

> [E]xcept lift up to 20 pounds at a time and frequently lift or carry 10 pounds. He is capable of standing, walking and sitting 6 hours out of an 8 hour work day and unlimited pushing and pulling within lifting restrictions. He is capable of simple, routine and repetitive tasks in a low stress job with only occasional decision-making and changes in work setting and no strict time or production requirements. He is also capable of superficial contact with the public and coworkers and occasionally with supervisors.

(Tr. 22.)

ALJ Sherry found Plaintiff could not perform past relevant work. (Tr. 26.) The ALJ found that based upon the VE's testimony, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform the requirements of the occupations of price marker, retail, mail clerk, and housekeeper/cleaner, and these jobs exist in significant numbers in the national economy. (Tr. 27-28.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff contends

the ALJ erred by improperly rejecting limitations assessed in two medical opinions and, thus, the hypothetical posed to the Vocational Expert was incomplete. (ECF No. 17 at 12-15.) The Plaintiff also argued that the ALJ erred by failing to properly conduct a DAA evaluation. (ECF No. 17 at 15-17.) Additionally, Plaintiff contends that the ALJ indicated he gave great weight to the assessed limitations from Dr. Toews, but he failed to incorporate all the limitations into his RFC. (ECF No. 17 at 13.) Also, the Plaintiff argues that the ALJ improperly rejected lay witness testimony and erred by relying upon vocational testimony that conflicted with the DOT. (ECF No. 17 at 18-20.) Defendant responds the Commissioner's decision is supported by substantial evidence and free of legal error. (ECF No. 23.)

**DISCUSSION**

**1. Medical Opinion of Sandra Birdlebough, Ph.D., ARNP.**[2]

Plaintiff complains the hypothetical was incomplete, due to the ALJ’s improper rejecting of the limitations assessed by Dr. Birdlebough. A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the

---

[2]Defendant argued in part that Dr. Birdlebough was an “unacceptable medical source” because she was simply an ARNP. (ECF No. 23 at 11-12.) Because it is clear from the record that Sandy Birdlebough holds a Ph.D., this argument will not be addressed. (TR. 284.)

claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). A Vocational Expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

The ALJ gave little weight to Dr. Birdlebough's August 22, 2006, Psychological/Psychiatric evaluation that assessed Plaintiff with several marked and severe functional limitations. (Tr. 25; 281-84.) These limitations were not included in the hypothetical posed to the VE and adopted by the ALJ.[3] (Tr. 69-74.) The ALJ provided several reasons for giving Dr. Birdlebough's assessments little weight: (1) the evaluation was completed for the purpose of determining Plaintiff's eligibility for public assistance; (2) the definitions of "marked" and "severe" used by DSHS are different from those used by SSA and the standards used and the public interest served by the form are different between the two agencies; and (3) Dr. Birdlebough's opinion indicated that all the diagnoses were caused by alcohol or drug abuse and therefore her assessment was based on drug and alcohol abuse. (Tr. 26.)

The opinions of examining physicians must be considered by the ALJ. See 20 C.F.R. § 404.1527; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of an examining physician is entitled

---

[3]When the ALJ asked the VE to incorporate Dr. Birdlebough's limitations into a hypothetical, the VE opined that a person with those limitations would not be able to perform any competitive work. (Tr. 73.)

to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. Where the opinion of an examining doctor is contradicted by another doctor, the examining doctor's opinion can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Andrews*, 53 F.3d at 1043.

In this case, one of the reasons the ALJ rejected Dr. Birdlebough's opinion was that it was obtained for the purpose of an evaluation for public assistance. (Tr. 25.) The Plaintiff correctly points out that the "purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester,* 81 F.3d at 832. This was not a legitimate reason for rejecting Dr. Birdlebough's opinion.

Similarly, the ALJ's rejection of Dr. Birdlebough's opinion on the basis that the DSHS and SSA definitions of "marked" and "severely limited" are different and "the standards for completing the form and the public interest served by form are different" were also in error. Dr. Birdlebough's opinion is not limited to the terms from DSHS. She explained her opinion in detail within the form in the narrative assessment. (Tr. 283.) Thus, this is not a legitimate reason for rejecting Dr. Birdlebough's report.

The ALJ's final reason for rejecting Dr. Birdlebough's opinion was that "all of the diagnoses were caused by alcohol or drug abuse and her assessment was based on drug and alcohol abuse." (Tr. 26.) Plaintiff argues that the ALJ committed error by rejecting the

opinion of Dr. Birdlebough because of the potential contribution of drug or alcohol abuse, without following the proper procedure for a DAA analysis. (ECF No. 17 at 12-15.) The Defendant responds that the ALJ's consideration of Plaintiff's drug abuse as a reason for disregarding Dr. Birdlebough's opinion is harmless error. (ECF No. 23 at 13.)

Dr. Birdlebough noted Plaintiff had a 30-year cannabis dependence. (Tr. 281.) Her diagnoses included cannabis dependence, anxiety disorder, NOS, alcohol dependence - full remission, antisocial personalities, with the possible diagnoses of delusional disorder and PTSD. (Tr. 282.) Dr. Birdlebough indicated that each of Plaintiff’s diagnosed conditions was likely caused by alcohol or drug abuse and she noted Plaintiff had experienced sexual abuse early in childhood. (Tr. 282.) She opined that the drug use “tremendously increases” Plaintiff’s paranoia, delusional thinking and anger. (Tr. 283.) Dr. Birdlebough also indicated that while Plaintiff’s cognitive factors were likely the result of alcohol or drug abuse, it is likely an underlying psychiatric disorder exists as well. (Tr. 283.) Dr. Birdlebough gave detailed explanations after each section explaining her ratings on the functional limitations. (Tr. 283.)

Upon *de novo* review, the medical records reveal Plaintiff used marijuana on a regular basis. (Tr. 268; 270; 278; 288; 329; 336; 360; 362.) On March 29, 2007, Dr. Toews noted that Plaintiff asserted he has multiple personality disorder, and he self-medicates with marijuana to “keep the voices under control.” (Tr. 288.) Dr. Toews’ diagnosed Plaintiff with depressive disorder, NOS, hypomania,

rule out ADHD; cannabis dependence, active; and cognitive disorder, NOS, probable. (Tr. 291.) Sharon Underwood, Ph.D., completed an assessment on April 2, 2007, that indicated Plaintiff had substance addiction disorders. (Tr. 301; 317.) Also on April 2, 2007, Disability Examiner Cheri Glore, opined that evidence existed of Plaintiff's drug-seeking behavior. (Tr. 324.) At step two, the ALJ found that Plaintiff had a severe impairment of polysubstance abuse. (Tr. 16.) The ALJ also used Plaintiff's conflicting reports of drug use as a basis to discount his credibility. (Tr. 24.)

Where alcohol or drug abuse is implicated in a disability proceeding, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001.) If, after factoring out the alcohol or drug abuse, the ALJ finds that the claimant is disabled and medical evidence of drug addiction or alcoholism exists, then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be disabled if he or she stopped using alcohol or drugs. *Bustamante,* 262 F.3d at 955; 20 C.F.R. §§ 404.1535, 416.935.

Defendant's argument that the lack of a DAA evaluation was harmless error is unpersuasive. The harm of an error is determined by "whether the ALJ's underlying decision remains supported, in spite of any error, and not whether the ALJ would necessarily reach the same result on remand." *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1162–1163 (9th Cir. 2008). In this case, the error was not harmless. The ALJ rejected Plaintiff's disabling limitations assessed by Dr. Birdlebough because the limitations were

caused by drug abuse. If those limitations are credited and the DAA analysis is performed, it is unclear if the ALJ would reach the same result.

In this case, the ALJ erred by considering the effect of Plaintiff's drug addiction in the initial determination of considering whether he was disabled. The record established that Plaintiff was dependent upon marijuana. The ALJ determined this was a severe impairment. The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of Plaintiff's marijuana dependence on his other impairments. If, and only if, the ALJ found that Plaintiff was disabled under the five-step inquiry, should the ALJ have evaluated whether Plaintiff would still be disabled if he stopped using marijuana. Instead, the ALJ discounted Dr. Birdlebough's assessment of Plaintiff's impairments because they were likely impacted by his marijuana dependence. This was error. Given the substantial evidence in the record that Plaintiff was dependent upon marijuana, the ALJ was required to conduct a proper DAA analysis. The failure to do so requires remand. *Bustamante,* 262 F.3d at 955-56.

**2. Jay M. Toews, Ed.D.**

Plaintiff argues that the ALJ indicated he gave great weight to the limitations assessed by Dr. Toews, but the ALJ failed to incorporate all the limitations into the hypothetical. Specifically, Plaintiff points out that Dr. Toews found Plaintiff would resist conventional employment, and would alienate the general public, coworkers and supervisors. (ECF No. 17 at 13.) Defendant responds that Dr. Toews' actual opinion and ultimate conclusions

were adequately represented in the hypothetical. (ECF No. 23 at 9.)

The ALJ gave great weight to Dr. Toews' opinion:

> The undersigned gives great weight to the assessments done by Dr. Toews who was able to review the claimant's medical record and examine the claimant. Dr. Toes found the claimant's mental impairments were mild and he could function quite well, and he was probably exaggerating his symptoms. These opinions are consistent with and supported by the bulk of the medical evidence of record.

(Tr. 26.)

Dr. Toews examined Plaintiff on March 9, 2007. (Tr. 287.) He diagnosed Plaintiff with Depressive Disorder, NOS, Hypomania; rule out ADHD; Cannabis Dependence, active; Cognitive Disorder, NOS, probable. (Tr. 291.) Dr. Toews noted that Plaintiff has been seen in emergency departments for evaluations, Plaintiff has a long history of cannabis dependence, and continues to use actively. (Tr. 289.) The Trails B results were considered valid, and were within the impaired range. Dr. Toews explained that the Trails B "is reasonably sensitive to neurocognitive compromise." (Tr. 291.) Finally, Dr. Toews summarized his impressions of Plaintiff:

> Mr. Jordan is an unusual and eccentric individual. He is hypomanic, verbose, loud, impulsive. He generally disregards social conventions. He is fairly egocentric. He has cultivated excellent survival skills. He is able to work at odd jobs. He generally would resist the conventional employment. [H]e would alienate the general public and probably alienate coworkers and supervisors. Intelligence and memory are well preserved. He would be able to function in a wide for NID[4] [sic] of occupations in which he worked in relative isolation and away from others. He appears competent to manage funds.

---

[4]The Defendant notes that this appears to be a transcription error, and suggests the correct wording was probably "variety." (ECF No. 23 at 10.)

(Tr. 291.)

The parties disagree on the meaning of Dr. Toews' above-quoted opinion, and specifically, whether Dr. Toews' assessment indicated Plaintiff had the ability and aptitude for substantial gainful employment. The hypothetical the ALJ posed to the VE did not include the portion of Dr. Toews' summary that indicated Plaintiff was likely to resist conventional employment and alienate co-workers, supervisors and the general public. (Tr. 69-71.) When similar limitations were included in the hypothetical, such as severe functional limitations in the ability to exercise judgment, make decisions, relate appropriately to coworkers and supervisors, and interact appropriately with the public, the VE opined that such limitations would preclude competitive work. (Tr. 73.)

In this case, the ALJ indicated that he gave "great weight" to the assessment of Dr. Toews, but provided no explanation for his failure to include all of Dr. Toews' assessed limitations in the RFC. On remand, the ALJ will review Dr. Toews' assessment and clarify his ruling on his adoption of this opinion.

**3. Lay Testimony.**

Plaintiff contends that the ALJ erred by failing to address lay testimony from Plaintiff's girlfriend. (ECF No. 17 at 18.) The Defendant contends that the ALJ's failure to address the lay testimony was harmless error because it was consistent with Plaintiff's testimony. (ECF No. 23 at 14-16.)

Plaintiff's girlfriend, Carmen Rochelle Hamlin, testified that she lives with Plaintiff and has known him for about ten years. (Tr. 62.) Ms. Hamlin testified about her observations of Plaintiff

and why he finds it impossible to obtain mental health treatment. (Tr. 64-65.) She also testified that Plaintiff rarely leaves the trailer without her help, and has done so about ten times in the past two years. (Tr. 65-66.)

In this case, the ALJ summarized Ms. Hamlin's testimony, but provided no analysis or reasons for rejecting this testimony. (Tr. 24.) "Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." *Sprague*, 812 F.2d at 1232. An ALJ may not dismiss lay testimony on the basis that he found the claimant not credible, and where an ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are "germane" to each witness. *Dodrill,* 12 F.3d at 918.

The ALJ provided no reasons for discounting Ms. Hamlin's testimony. On remand, the ALJ will provide reasoning relating to the weight accorded to Ms. Hamlin's testimony.

**4. Vocational Testimony.**

Finally, Plaintiff contends that the ALJ failed to provide persuasive evidence to support his reliance on vocational testimony that conflicts with the DOT. (ECF No. 17 at 18.) The Defendant responds that the vocational expert's testimony was not contradictory. (ECF No. 23 at 16-17.)

One of the hypotheticals posed to the vocational expert was:

> [A]ssume a similar person, age, education, and work experience. This time in the sedentary category lifting up to ten pounds at a time, occasionally lifting or carrying articles like files, ledgers, and small tools, could sit – could stand or walk .... six hours in an eight hour day and sit for about six hours in an eight hour day, unlimited push/pull within the lifting restrictions. As far as mental limitations, capable of simple, routine, repetitive tasks in a low stress job with having only occasional decision making and only occasional changes in the work setting, no stick – no strict time or production requirements, no contact with the public, superficial contact with coworkers, and occasional contacts with supervisors.

(Tr. 70-71.)

The Vocational Expert explained that the DOT did not have a category for jobs that require ten pounds only of lifting, and no need for standing and walking. (Tr. 71-72.) The VE testified a reasonable estimate of jobs that would fit that category would be to reduce the estimate of selected jobs by one-half. (Tr. 72-73.)

The ALJ acknowledged the VE's testimony was inconsistent with the DOT:

> Although the vocational expert testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. When questioned regarding jobs that are cross-over jobs that are between light and sedentary (i.e., jobs that are classified as light, however the lifting requirements are equivalent to sedentary) the vocational expert testified that the DOT does not have a category for jobs that are 10 pounds lifting and 6 hours standing and walking. Therefore, in reducing the number that is presented you will get a reasonable estimate of the number available for these types of jobs.

(Tr. 28.)

To accept vocational expert testimony that contradicts DICOT, "the record must contain 'persuasive evidence to support the deviation.'" *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001)(quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Social Security Administration*, 119 F.3d 789, 793 (9th Cir. 1997), as amended (citations omitted).

As pointed out by the Defendant, the DOT descriptions for marker, mail clerk and cleaning, housekeeper all contain the proviso that the weight lifted may be a negligible amount:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT 209.587-034; 209.687-026; 323.687-014.

An ALJ may rely upon evidence from a VE based upon his or her "experience in job placement or career counseling" for information about a particular job's requirements that does not appear in the DOT.[5]

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR-004P. In this case, the VE confirmed that "cross-over" jobs exist that are classified as "light," but that the lifting requirements are more in line with the "sedentary" classification. (Tr. 71.) The ALJ's reliance upon the VE's experience in

---

[5] SSR 00-4P.

determining that half of the positions in the stated jobs would fit the "cross-over" category was sufficient to support the ALJ's finding.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. Remand for further administrative action consistent with this Memoranda and Order is necessary.[6] Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 22)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and

---

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Immigration & Naturalization Service v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).

provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff** and the file shall be **CLOSED.**

DATED April 27, 2012.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE